

**FILED**

MAR 19 2019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>GRAIL SEMICONDUCTOR,<br>　　　　　Debtor. | Case No. 15-29890-D-7 |
| SEDGWICK FUNDINGCO, LLC,<br>　　　　　Plaintiff,<br>v.<br>MITCHELL NEWDELMAN, et al.,<br>　　　　　Defendants. | Adv. Pro. No. 18-2180-D<br>DC No.: None given<br><br>DATE: March 13, 2019<br>TIME: 10:00 a.m.<br>DEPT: D |

## MEMORANDUM OF DECISION

On January 31, 2019, counterdefendant Sedgwick FundingCo, LLC ("Sedgwick") filed a motion to dismiss the amended counterclaim of Mitchell J. NewDelman, Frank B. Holze, and Willis E. Higgins (collectively, "NewDelman"). NewDelman filed a response in the nature of an opposition, Sedgwick filed a reply, and the court heard oral argument. For the following reasons, the motion will be granted in part and denied in part.

This adversary proceeding concerns a Priority Agreement among the debtor in the parent chapter 7 case and certain of its creditors, including Sedgwick, NewDelman, and Ronald Hofer, who is also a defendant in the adversary proceeding, regarding the order of distribution of the proceeds of the debtor's litigation

against Mitsubishi Electric and Electronics USA, Inc. ("Mitsubishi").[1] Sedgwick filed the complaint commencing this adversary proceeding, seeking a determination that its claim against the bankruptcy estate has priority over NewDelman's claim and the claim of Ronald Hofer. NewDelman responded with an amended answer and counterclaim that includes nine affirmative claims against Sedgwick.

Sedgwick contends, first, that NewDelman lacks standing because its claims are derivative of the estate's claims – claims that were released by the trustee in her recent settlement with Sedgwick. As to one of NewDelman's claims, Claim VIII – a claim to "reverse" an alleged fraudulent transfer to Sedgwick, the court agrees with Sedgwick.

The power to avoid a fraudulent transfer may be exercised by a trustee (§ 548 of the Code) or a chapter 11 debtor-in-possession (§ 1107(a)) or by someone else if the trustee or debtor-in-possession transfers his or her avoidance powers, or some of them, through a plan of reorganization or outside of a plan "when a creditor is pursuing interests common to all creditors." Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 780-81 (9th Cir. 1999). Here, the trustee did not transfer any of her avoiding powers to NewDelman, including the power to seek to avoid the pre-petition payment to Sedgwick as a fraudulent transfer. That power at all times

---

1. NewDelman claims there were different versions of the Priority Agreement and there is a dispute as to which was the actual contract. The court need not determine either issue here, and will use the term "Priority Agreement" in the singular for the sake of convenience.

remained with the trustee until, as a part of her compromise with Sedgwick, she released all of the estate's claims against Sedgwick. The claim NewDelman now attempts to assert is derivative of a claim that belonged to the estate, which the trustee has now relinquished. Accordingly, as to Claim VIII, the motion will be granted.

As to the remaining claims, however, the court does not agree they are derivative of the estate's claims. Sedgwick contends "[NewDelman] is not the proper party to challenge or seek recovery based upon [Sedgwick's] alleged misconduct, as any such claims necessarily belong to the Estate for the benefit of all creditors." Sedgwick's Memo., filed Jan. 31, 2019 ("Memo."), at 12:17-18. The contention is nothing but a conclusion. Sedgwick offers no analysis as to why claims of alleged misconduct on Sedgwick's part "necessarily" belonged to the debtor, and hence, to the estate once the bankruptcy case was filed. There were nine parties to the Priority Agreement; each of them had and/or has rights against the others arising out of the agreement. Sedgwick's position that any and all claims of the other parties to the agreement necessarily belonged to the debtor makes no more sense when applied to NewDelman's claims against other parties than to the claims of, for example, Ronald Hofer, or Sedgwick itself.[2]

---

2. Hofer's and NewDelman's claims against Sedgwick under the Priority Agreement differ in that Hofer expressly assigned all of his claims against Sedgwick to the estate in his compromise with the trustee (see Order Granting Motion to Approve Settlement with Ronald Hofer, filed April 12, 2018 in Case No. 15-29890, Ex. A, ¶ 4), whereas NewDelman did not. In fact, NewDelman's settlement with the trustee stated, "this Settlement Agreement shall not preclude any individual claim, defense or

1    In the cases cited by Sedgwick, it was clear the claims the
2 plaintiff sought to assert were claims belonging to the debtor,
3 to which the estate succeeded.  In <u>Estate of Spirtos v. One San</u>
4 <u>Bernardino County Superior Court Case Numbered SPR 02211</u>, 443
5 F.3d 1172 (9th Cir. 2006), for example, "[t]he substance of
6 plaintiff's claims [was] that the defendants 'have jointly
7 conspired to conceal assets belonging to the bankruptcy and
8 probate estates of [the debtor and decedent] for the purpose of
9 obstructing the payment of the Decedent's creditors and legal
10 heirs . . . .'"  <u>Id.</u> at 1174.  The court held that as a creditor,
11 the plaintiff did not have standing to assert claims belonging to
12 the estate, and those claims could be asserted exclusively by the
13 trustee.  <u>Id.</u> at 1175.  Similarly, in <u>CAMOFI Master LDC v.</u>
14 <u>Associated Third Party Adm'rs</u>, 2018 U.S. Dist. LEXIS 23657, 2018
15 WL 839134 (N.D. Cal. 2018), also cited by Sedgwick, the
16 creditor/plaintiffs alleged insiders of the debtor had "breached
17 their fiduciary duty to preserve the corporation's assets for the
18 benefit of creditors, but that they instead 'wrongfully
19 dissipat[ed]' the assets by 'funneling assets to themselves,'"
20 and that the transfers of assets were fraudulent transfers.  2018
21 U.S. Dist. LEXIS 23657, at *7.  Thus, the court held, the actions
22 were derivative and could be pursued only by the trustee.  <u>Id.</u> at
23 *13-15, 19-22.

24   That is not the case here.  Except for the fraudulent
25 transfer claim, NewDelman is not pursuing claims that could have

---

27 right to[sic] which [NewDelman] may have against [Sedgwick]
and/or other non-debtors."  Order Granting Motion to Approve
28 Settlement with the NewDelman Group, filed Jan. 15, 2019 in Case
No. 15-29890, Ex. A, ¶ 5.

been pursued by the debtor, and hence, by the trustee. In fact, the debtor was a party to the Priority Agreement, apparently (although the court is not deciding) in last position – to be paid after all the other parties had been paid in full. NewDelman is not asserting claims the debtor could have made; in fact, it asserts the debtor was wrongfully paid ahead of NewDelman, to New Delman's detriment. Nor is NewDelman asserting claims the trustee could have asserted on behalf of the creditors as a whole. It is asserting claims peculiar to NewDelman; that is, its own direct claims.

　　　Sedgwick was the second of three parties to the Priority Agreement – Hofer, Sedgwick, and NewDelman – to settle with the trustee. It had evidently become apparent by the time of the Sedgwick compromise that none of the parties to the Priority Agreement had taken any action to determine rights under it, and the trustee and Sedgwick included in their settlement agreement a deadline by which Sedgwick would be required to file an adversary complaint. In terms of standing to pursue rights under the Priority Agreement, the trustee might just as well have waited and insisted on a deadline for NewDelman to bring its claims when she settled with NewDelman. At the hearings on the trustee/Sedgwick compromise, the court went to great lengths to express its view that it could not approve a settlement that would affect, determine, compromise, or limit the rights of third parties who were not parties to the trustee/Sedgwick settlement agreement. And in its ruling, as to the parties to the Priority Agreement, the court "conclude[d] their rights to litigate the validity and effect of the Priority Agreements are not affected

by the compromise . . . ." Civil Minutes, filed Oct. 17, 2018, DC No. DNL-42, p. 10.

The fact that it was Sedgwick that filed the complaint rather than NewDelman has no effect on the parties' respective direct claims against each other. In other words, NewDelman's claims against Sedgwick are no more derivative of the trustee's claims than are Sedgwick's claims against NewDelman. To dismiss NewDelman's claims at this stage would be to permit one party's claims to stand while knocking out the other's arbitrarily. Sedgwick short-circuited the issue in its own complaint by asserting a single claim: declaratory relief in the form of a declaration that Sedgwick was "on first" and NewDelman and Hofer were "on second" (actually, on second and third after the Niro law firm). It is possible NewDelman could have done the same in its counterclaim. That it sought to flesh out various causes of action is not something it should be penalized for. At this stage, NewDelman has as much right to assert its claims against Sedgwick as Sedgwick has to asserts its claims against NewDelman.

At the hearing on this motion, Sedgwick's counsel argued that the court, in its tentative ruling, had not adequately addressed NewDelman's standing to assert claims of conversion, for a constructive trust, and for unjust enrichment. Counsel argued that as a matter of bankruptcy law, it cannot be the case that NewDelman can assert such claims because if it can, then every creditor would have a claim against any other party that received funds of the debtor pre-petition. Therefore, in Sedgwick's view, the claims are strictly derivative of the trustee's claims. The court simply does not see the matter that

way. This is not a case of NewDelman suing one particular other creditor for funds the defendant creditor happened to receive from the debtor pre-petition - funds that otherwise would have gone to the creditor body as a whole. NewDelman's claims are based on what Sedgwick is alleged to have done in regards to funds of the debtor allegedly specifically designated for NewDelman; that is, funds that, if they had not gone to Sedgwick, would have gone to NewDelman. In other words, it is NewDelman's position that Sedgwick was unjustly enriched at NewDelman's expense, not at the debtor's expense.

Sedgwick also argues, as a part of its standing theory, that NewDelman can claim no damages because if it had received what it claims it was entitled to under the Priority Agreement, the payment of those funds would have been a preference avoidable by the trustee. Ironically, Sedgwick received $12,269,881 from the debtor's settlement funds at the same time NewDelman was supposed to have received its share under the Priority Agreement. The trustee later asserted the $12,269,881 payment to Sedgwick was a preference and Sedgwick vigorously disputed the claim. Yet Sedgwick would now have the court dismiss NewDelman's claims on the basis, as a fait accompli, that if NewDelman had been paid, its payment would have been a preference. In short, the court sees the issue as one of damages which, at this stage, is speculative at best. At the pleading stage, Sedgwick is asking the court to assume much more than is appropriate.[3]

---

3. Prior to her settlement with Sedgwick, the trustee made allegations about Sedgwick's conduct - the conduct that resulted in it receiving $12,269,881 and NewDelman, among others, receiving nothing - that are similar to the allegations NewDelman

Sedgwick next contends, pursuant to Fed. R. Civ. P. 12(b)(6), incorporated herein by Fed. R. Bankr. P. 7012(b), that each of NewDelman's claims fails to state a claim upon which relief can be granted. With respect to Claim III - for tortious interference with a contractual relationship, the court agrees. "[T]he tort cause of action for interference with contract does not lie against a party to the contract." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 514 (1994); see also Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 997 (2018). Because Sedgwick was a party to the Priority Agreement, it cannot be held liable to NewDelman in tort for interference with that contract. Accordingly, as to Claim III, the motion will be granted.

As to the rest of NewDelman's claims, however, accepting the allegations of the counterclaim as true and drawing all reasonable inferences in favor of NewDelman, the court concludes they contain sufficient factual matter to state claims to relief that are plausible on their face, as required. See al-Kidd v. Ashcroft, 580 F.3d 949, 949 (9th Cir. 2009), citing Ashcroft v.

---

makes now. For example, the trustee claimed Sedgwick had "breached . . . covenants to refrain from overreaching in the tactics used and settlement terms accepted by the Debtor in the Mitsubishi litigation" and "broke a promise to negotiate and return a portion of the $12.3 million to facilitate resolution with other creditors to induce the debtor to accept the $55 million from Mitsubishi . . . ." Trustee's Motion To Approve Sedgwick Compromise, Etc., filed Aug. 22, 2018 in the parent case, at 14:8-12. Sedgwick no doubt sees this as support for its conclusion that NewDelman's claims are derivative of those of the trustee. Not so. Although the trustee alleged and New Delman alleges the same or similar conduct on the part of Sedgwick, the trustee alleged harm to the debtor (and hence, to the estate) whereas New Delman alleges harm to NewDelman. As the court sees the matter: different harm, different claims.

*Iqbal*, 129 S. Ct. 1937, 1949 (2009), in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations in the claims themselves are not extensive, but each incorporates the allegations in the preceding paragraphs, which include a significant number of sufficiently detailed allegations. These are sufficient to give Sedgwick notice of the particular misconduct it is charged with so it can defend itself and not just deny it has done anything wrong. See *Johnson v. JP Morgan Chase Bank*, 395 B.R. 442, 446-47 (E.D. Cal. 2008), quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

As to particular causes of action, Sedgwick makes arguments that might be appropriate in a motion for summary judgment after the parties have had the opportunity to conduct discovery, but they do not support dismissal at the pleading stage. For example, citing Cal. Civ. Code §§ 2223 and 2224 and *Murphy v. T. Rowe Price Prime Reserve Fund*, 8 F.3d 1420, 1423 (9th Cir. 1993), Sedgwick states, "there exists no legal or factual basis to impose a constructive trust on the Settlement Funds that were distributed to Sedgwick." Memo. at 21:8-9. As the court reads the elements of a constructive trust claim, as set forth in the statutes and in *Murphy*, NewDelman has pled facts sufficient to support the claim. See *Murphy*, 8 F.3d at 1422-23. It is possible that by motion for summary judgment, Sedgwick could demonstrate "there is no legal or factual basis" to impose such a trust, but NewDelman is not required to establish such a basis at the pleading stage. (In fact, in Murphy, the court was ruling on

an appeal from an order granting summary judgment.)[4]

Still others of Sedgwick's arguments are unnecessarily formalistic. For example, Sedgwick contends that "[u]nder California law, 'a plaintiff may not pursue or recover a quasi-contract claim' such as unjust enrichment 'if the parties have an enforceable agreement.'" Memo. at 21:13-14. Sedgwick cites no authority for the proposition that a contract claim and a quasi-contract claim may not be pled in the alternative (a point acknowledged in the case cited by Sedgwick for this proposition, Copart, Inc. v. Sparta Consulting, Inc., 339 F. Supp. 3d 959, 984 (E.D. Cal. 2018)). Particularly given the sophistication of the parties and their counsel, the court sees no substantial benefit to be gained from forcing NewDelman to amend its counterclaim to expressly allege that its constructive trust and unjust enrichment claims are pled in the alternative to its contract

---

4. In similar fashion, concerning NewDelman's unjust enrichment claim, Sedgwick argues that NewDelman's claims are conclusory and unsupported, and goes on to state the facts as Sedgwick sees them, as though they had been determined. NewDelman's factual allegations are, however, not too conclusory to withstand this motion, and the fact they are "unsupported" at this stage is simply a reflection of the fact that this is a motion based on the pleadings.

Sedgwick also contends NewDelman "nonsensically attempts to assert a claim for conversion against Sedgwick, notwithstanding its inability to plead the fundamental element for this claim." Memo. at 20:10-11. Sedgwick contends NewDelman "ignores the fact that it did not own or hold any right of personal possession in the Settlement Funds at issue." Id. at 20:19-20. Sedgwick, without authority, limits the possibilities for a "right of personal possession" to a lien, ownership, or secured interest, whereas as the court reads the counterclaim, NewDelman alleges a right of personal possession in a share of the settlement funds akin to its claims to a constructive trust and for unjust enrichment and based on the same allegations. Sedgwick offers no analysis of the factual allegations supporting the claims; it merely states the conclusion it would like to see drawn from them.

claims.⁵

Finally, Sedgwick contends that all of NewDelman's claims except its breach of contract claim are barred by the statute of limitations. Sedgwick's conduct complained of by NewDelman occurred in or around October of 2015; NewDelman's counterclaim was filed in December of 2018. Sedgwick's position is that California law applies and that each of NewDelman's claims except the breach of contract claim is barred by a two- or three-year statute of limitations under California law. NewDelman responds that the applicable statute is the longer one afforded by Illinois law. Both parties rely on PNC Bank v. Sterba (In re Sterba), 852 F.3d 1175 (9th Cir. 2017) - Sedgwick for the proposition that "'[t]he forum [jurisdiction] will apply its own statute of limitations' barring 'exceptional circumstances'" (Memo., at 22:24-25, quoting Sterba, at 1179) and NewDelman for the proposition that exceptional circumstances exist here. Based

---

5. Similarly, Sedgwick contends, "'A constructive trust is an equitable remedy imposed to prevent unjust enrichment' under California law, not a stand-alone cause of action. In re Advent Mgmt. Corp., 178 B.R. 480, 486 (B.A.P. 9th Cir. 1995)." The court has found one case for the proposition that a constructive trust is not a stand-alone claim (Bermuda Rd. Props., LLC v. EcoLogical Steel Sys., 2017 U.S. Dist. LEXIS 29768, *7, 2017 WL 797092 (D. Nev. 2017) (in default judgment context)), but one citing California cases that "have permitted separate causes of action for constructive trust where there is fraud, breach of duty, or any other act that entitles the plaintiff to some relief." Kelleher v. Kelleher, 2014 U.S. Dist. LEXIS 2773, *26, 2014 WL 94197 (N.D. Cal. 2014). The court is also aware the right to a constructive trust, like a claim for unjust enrichment, is frequently pled as such without undue confusion or prejudice.

As an aside, albeit in the court's view an important one, the actual language in the case quoted by Sedgwick ends after "prevent unjust enrichment." The decision said nothing about unjust enrichment not being a stand-alone cause of action. See Advent Mgmt., Corp., 178 B.R. at 486.

on the analysis in <u>Sterba</u> and that court's finding of exceptional circumstances in the case before it, the court agrees with NewDelman and holds the applicable statute of limitations on NewDelman's claims is Illinois' five-year statute.

The <u>Sterba</u> court began by noting the Ninth Circuit has "directly adopted" Restatement (Second) of Conflict of Laws § 142, the section setting forth Sedgwick's position, as quoted above. <u>Sterba</u>, 852 F.3d at 1179. The court then discussed the policies underlying the rule.

> The Second Restatement's preference for the forum state's statute of limitations, in cases where it has the shorter limitations period, is based on the policy that "[a] state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'" § 142, cmt. f (1988). In the ordinary case, that interest is treated as controlling because vindicating it imposes no real prejudice on the time-barred party—dismissal of a claim as barred by the statute of limitations generally "does not constitute a judgment on the merits," and following such a dismissal "the plaintiff will usually remain free to sue" in a state with a more generous limitations period. <u>Id.</u> But where a countervailing interest exists such that "under the special circumstances of the case dismissal . . . would be unjust," the forum (here, California) will apply another state's longer statute of limitations. <u>Id.</u>

<u>Sterba</u>, at 1179 (footnote omitted).

Based on that analysis, the <u>Sterba</u> court found exceptional circumstances and held that the longer statute of limitations under Ohio law, which was the law selected by the parties in the choice of law provision in their contract, would govern over California's shorter statute because the plaintiff – the holder of a promissory note from a debtor who had filed bankruptcy in California, had no choice but to file its proof of claim in the California bankruptcy court. <u>Sterba</u>, 852 F.3d at 1180.

> Here, the unique strictures of the bankruptcy code mean that, through no fault of PNC's, there is no forum for its claim other than the Northern District of California. This is not a case filed voluntarily in California, in which a dismissal on statute of limitations grounds would be without prejudice to bringing the same claim in Ohio. Rather, once the Sterbas declared bankruptcy, PNC was obligated to bring all its claims in the district where the Sterbas filed. Under these circumstances, to reject PNC's claim as time-barred would be the functional equivalent of a dismissal on the merits. Where another jurisdiction—National City's home state of Ohio—would hear the claim, and has a substantial interest in its resolution, disallowing it by mechanical adoption of California's statute of limitations would be wholly unreasonable.

Id. (footnote omitted).

Sedgwick, latching on to the language in Sterba that "through no fault of PNC's, there is no forum for its claim other than the Northern District of California," attempts to find fault on NewDelman's part. Thus, Sedgwick assigns blame to NewDelman for not bringing its claims under the Priority Agreement earlier. In Sedgwick's view, "the delay in bringing these claims is precisely – and solely – the fault of [NewDelman]. Indeed, if [NewDelman] had possessed independent, non-derivative claims against Sedgwick, it would have been free to bring such claims at any time." Sedgwick's Reply, filed March 6, 2019 ("Reply"), at 16:4-6. The point in Sterba, however, was not whether the party bringing the claim was to blame for delaying beyond the shortest of two possible statutes of limitations. The point was whether, through no fault of the plaintiff, there was but one forum in which to bring the claim.

/ / /

/ / /

/ / /

NewDelman is not to blame for bringing its claims in this court rather than in Illinois.[6] It is likely NewDelman's claims were compulsory counterclaims to the claims Sedgwick makes in its adversary complaint; thus, NewDelman was required to bring them here. In fact, given the five-year statute of limitations NewDelman asserts as governing its claims, in the absence of Sedgwick's adversary complaint, NewDelman would likely be able to commence its own litigation in Illinois, even at this point in time. The point here is that Sedgwick agreed in its compromise with the trustee to file an adversary complaint here to determine the rights of the parties to the Priority Agreement other than the debtor and the estate. In filing its counterclaim, NewDelman was merely exercising its right, and probably its obligation, to have its own claims against Sedgwick under that agreement determined in the same court.

Finally, Sedgwick denies that Illinois law governs, contending there was no choice of law provision in the Priority Agreement. The Priority Agreement, however, refers to and "incorporates by reference herein" a fee agreement dated April 12, 2012 between the debtor and its then attorneys in the Mitsubishi litigation, an agreement which itself had an Illinois choice of law clause. Sedgwick states in a footnote, "this

---

6. In fact, in January of 2016, just after the debtor commenced this bankruptcy case, NewDelman filed an action under the Priority Agreement in Illinois state court against the debtor's counsel in the Mitsubishi litigation, the Niro law firm. The Illinois court, on the Niro firm's request, placed the case on its "automatic bankruptcy stay calendar." Sedgwick's Ex. 10. That decision by the court would not likely have encouraged NewDelman to bring its claims against other parties to the Priority Agreement, including Sedgwick, in Illinois state court.

- 14 -

language [in the Priority Agreement] does not and cannot bind the Priority Agreement's other nine parties as parties to the terms of that separate agreement between the Debtor and its counsel." Reply at 16:27-28. With no analysis or authority offered by Sedgwick, and the court aware of none, the court has no basis on which to agree.

For the reasons stated, the motion will be granted in part and NewDelman's Claims III and VIII will be dismissed. As to NewDelman's other claims, the motion will be denied. The court will issue an order.

Dated: March 19, 2019

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Plaintiff(s):** | **Attorney for Plaintiff(s) (if any):** |
|---|---|
| **Defendant(s):** | **Attorney for Defendant(s) (if any):** |
| **Bankruptcy Trustee** (if appointed in the case)<br><br>**All Parties in Interest** | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |