**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 15-29890-A-7 |
| GRAIL SEMICONDUCTOR, A CALIFORNIA CORPORATION, | |
| Debtor. | |
| SEDGWICK FUNDINGCO, LLC, | Adv. No. 18-2180-A |
| Plaintiff, | OHS-1 |
| v. | **MEMORANDUM** |
| MITCHELL NEWDELMAN et al., | |
| Defendants. | |

Argued and submitted on June 9, 2022

at Sacramento, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances:    Marc A. Levinson, Russell P. Cohen, Robert
Loeb, Orrick, Herrington & Sutcliffe LLP;
Norman Neville Reid, Erik Ives, Ryan
Schultz, Fox, Swibel & Carroll LLP for
Sedgwick FundingCo, LLC;  Ivan K. Mathew,
Ivan K. Mathew P.C. and Allan D. NewDelman
for Mitchell NewDelman, Frank Holze, and
Willis Higgins

1    "Measure seven times, cut once."  Russian proverb.

2  **I.    FACTS**

3    This is a dispute between the creditors of but one debtor.  The

4  dispute arises from an intercreditor agreement, known to the parties

5  as the Priority Agreement.  Intercreditor agreements define the rights

6  of creditors of a common debtor among themselves.  The cast includes

7  Sedgwick FundingCo, LLC ("Sedgwick"), a litigation funding company,

8  and Willis Higgins, Mitchell NewDelman, as well as Frank Holze

9  (collectively "the NewDelman Group"), creditors which predate

10  Sedwick's involvement.

11    The facts giving rise to the dispute and a summary of procedural

12  history is set forth in this court's previous ruling.  Mem. 2:1-38:13,

13  ECF No. 303.  Other members of the company include: Grail

14  Semiconductor (the debtor); Richard Gilbert (a member of its board of

15  directors); the Niro firm and Ray Niro (Grail's litigation counsel);

16  Gerchen Keller Capital, LLC ("GKC") and its affiliate, Sedgwick (the

17  litigation funding lender); and Ashley Keller (a managing director of

18  GKC).

19    Sedgwick filed a complaint for declaratory relief, citing its

20  rights under the Priority Agreement.  In response, the NewDelman Group

21  filed a counterclaim, asserting claims for breach of contract, breach

22  of the implied covenant of good faith and fair dealing, fraud,

23  conversion, constructive trust, unjust enrichment, and civil

24  conspiracy.

25    Discovery in this adversary proceeding is complete.  Order ¶1,

26  ECF No. 98.

27    Sedgwick and the NewDelman Group filed cross-motions for summary

28  judgment.  The NewDelman Group sought summary judgment on issues

solely on Sedgwick's declaratory relief claim, contending it "failed

to state a claim for relief, as [Sedgwick] has not performed the

obligations of the [Priority Agreement].  Not. Summ. J. 1:1-6, 6:23-

7:2, ECF No. 259.  Sedgwick sought to summarily adjudicate: (1) its

complaint, i.e., declaratory relief regarding the enforceability, as

well as the interpretation, of the Priority Agreement; and (2) the

NewDelman Group's counterclaim that it had engaged in a civil

conspiracy with third parties to commit concealment fraud against

them.

    In support of those motions, the parties submitted: 125 pages of

briefs; 147 separate (and allegedly) undisputed facts; 17 pages of

stipulated facts, Stipulation of Agreed Facts and Authenticity of

Documents, ECF No. 240; 1,797 pages of exhibits, Common Ex., ECF No.

239-252; and 33 pages of affidavits, Aff. Gerchen, Keller, Thelen, and

Gilbert, ECF No. 252.  Strangely enough, the central facts are not in

dispute.  The parties attempted to configure their rights by way of

the Priority Agreement.  It provided:

> Reference is made to a[n] Amended Fee Agreement dated April
> 10, 2012[,] by and between Niro, Haller and Niro and Grail
> Semiconductor, Inc., which is hereby incorporated by
> reference herein.  *Except as expressly modified in this
> Agreement, the Amended Fee Agreement remains in full force
> and effect.*
>
> The last sentence of Paragraph 5 of the Amended Fee
> Agreement at page seven (7) is hereby deleted and replaced
> with the following provision.
>
> The amounts of the payments to Niro, Haller and Niro,
> Gerchen Keller Capital LLC (GKC herein), [and] First Class
> Legal (First Class herein) shall be determined in
> accordance with their respective agreements as of the date
> of this Priority Agreement with Grail Semiconductor, Inc.,
> and the individuals set forth below specifically referred
> to in the Amended Fee Agreement as 'the above named
> individuals' shall be determined as follows:
>
> First Priority: Niro, Haller and Niro in accordance with

the Amended Fee Agreement.

Second Priority: GKC

Third Priority: First Class for reimbursement of loans and related interest up to seventeen million four hundred thousand U.S. dollars (US $$17.4 million) as of the date of this Priority Agreement, and distributions of gross Recoveries as defined in the Amended Fee Agreement thereafter by percentages *pari passu* with 'the above named individuals' as follows:

> First Class: Nineteen Percent (19.0%) of the gross Recoveries.
>
> Mitchell J. NewDelman: Five percent (5%) of the gross Recoveries.
>
> Dr. Frank B. Holze: One percent (1%) of the gross Recoveries.
>
> Willis E. Higgins: Three percent (3%) of the gross Recoveries.
>
> Donald S. Stern: Five percent (5%) of the gross Recoveries.
>
> Ronald W. Hofer: Five percent (5%) of the gross Recoveries.

*All of the first, second and third priority payments shall be made concomitantly* and directly by Niro, Haller and Niro from their trust account to the first, second and third priority entities and individuals (or to the respective order of such individuals, or their respective estate or administrator, if deceased or known to be incapacitated). The remaining balance of the gross Recoveries shall be then paid to Grail Semiconductor, Inc. by Niro, Haller and Niro from their trust account.

This agreement is the entire agreement between the parties hereto and is effective as of the date of the last signature below. Separate signed copies shall be treated as a single original, and a signed, digitally scanned and transmitted by e-mail attachment shall constitute execution and delivery by the respective party thereto.

Common Ex., Priority Agreement 754-764, ECF No. 246 (emphasis original and added). A genuine dispute of facts exists as to whether the Priority Agreement was, in fact, accepted by all parties to it.

The NewDelman Group contends that Sedgwick and its managing

director, Ashley Keller, Grail Semiconductor and its director, Richard

Gilbert, the Niro firm, and the Niro firm's lead attorney on the case,

Ray Niro, conspired to sidestep the Priority Agreement, causing them

injury.  The facts on which the NewDelman Group relies for its

contention are set forth in the stipulated facts and in a "Letter of

Intent," prepared by Richard Gilbert and approved, but not signed, by

Sedgwick.  Those facts are:

> 58.  On October 12, 2015, [Richard] Gilbert sent [Ashley]
> Keller and Ray Niro each a draft of a written Letter of
> Intent.  A true and correct copy of the cover email and
> draft Letter of Intent sent by [Richard] Gilbert to
> [Ashley] Keller is located at MSJ Ex. 73, and a true then
> correct copy of the cover email and draft letter of intent
> sent by [Richard] Gilbert to [Ray] Niro is located as a
> part of MSJ Ex. 77.

> [This letter will set out the understanding and intent
> of Grail Semiconductor, Inc. ('Grail') and Gerchen
> Keller Capital, LLC ('GKC') with respect to certain
> sums which will become due to GKC from Grail on the
> occasion of the receipt of proceeds from Grail's
> pending action against Mitsubishi Electric &
> [E]lectronics, USA, Inc., now pending in the Superior
> Court of California in Santa Clara County ('the MEUS
> Litigation').

> This understanding and intent arises from the belief
> of Grail and GKC that the MEUS Litigation will shortly
> be resolved by way of compromise.  Grail and GKC
> recognize that there is uncertainty with respect to
> the nature and amount of claims of third parties which
> might be asserted against the proceeds of such a
> compromise such that the ability of Grail to meet all
> of its creditor obligations depending upon the amount
> of such proceeds is subject to question and, under
> certain circumstances, could result in a distribution
> to GKC of less than the amount to which it is
> contractually entitled to receive.

> In light of the circumstances, Grail and GKC agree
> that it is in the interest of both entities to enter
> into good faith negotiations for an agreed-upon
> reduction of the amounts currently payable to GKC by
> Grail in accordance with its existing funding and
> other agreements in order to liquidate such obligation
> in the best interest of Grail and GKC.  *It is further
> agreed that it is in the interests of both Grail and
> GKC that, should the MEUS Litigation be resolved by*

*compromise as anticipated, the full amount due GKC shall be immediately distributed by Grail to GKC* with the understanding that GKC warrants and represents that it shall, at all times during the course of negotiations required by this Agreement, have sufficient liquid assets available to refund to Grail the finally negotiated discount amount within five business days of the formal approval of such agreement.

*As further consideration of this agreement, GKC agrees that it will cooperate with Grail in the negotiation and settlement of competing claims against the proceeds of the MEUS Litigation.* Common Ex., Letter of Intent 931-932, ECF No. 249 (emphasis added); Agreed Facts 16:6-10.]

59.  On October 14, 2015, Douglas Gruener (GKC's general counsel) sent [Richard] Gilbert (with a copy to [Ashley] Keller) an updated version containing proposed edits to the draft Letter of Intent.  A true and correct copy of the cover email and updated draft Letter of Intent sent by Douglas Gruener to [Richard] Gilbert is located at MSJ Ex. 76.[1]

60.  *On October 14, 2015, [Richard] Gilbert responded to Douglas Gruener and Ashley Keller that 'he was fine with these changes and will recommend it [to Grail's Board of Directors].'*  [Richard] Gilbert further advised that Ray Niro had requested additional language in the Letter of Intent for the Niro Law Firm to limit Grail's use of the negotiated refund.  *On October 14, 2015 [Ashley] Keller responded to [Richard] Gilbert in a message stating 'Our language is fine with us.  No further restriction required.'*  A true and correct copy of the October 14, 2015 e-mail chain described herein is located at MSJ Ex. 75.

Stipulation of Agreed Facts and Authenticity of Documents 16:6-21, ECF No. 240 (emphasis added).

After oral argument, the court issued a 79-page decision granting in part and denying in part each motion. Mem., ECF No. 303.  The memorandum followed the structure proffered by Sedgwick in its motion, first treating Sedgwick's attempt to summarily adjudicate its rights under its complaint, i.e., the Priority Agreement, and second attempting to dispose of the NewDelman Group's counterclaims, i.e.,

---

[1] For the purposes of this dispute, Gruner's edits are not significant.  Mem. 32:1-16, ECF NO. 303.

Illinois state law tort claims. Among other things, the court found the Priority Agreement facially ambiguous and that a genuine issue of fact exists as to its interpretation. The court also found a civil conspiracy between Sedgwick and third parties to defraud the NewDelman Group. When resolving Sedgwick's motion as to the counterclaims, the court erroneously referred to granting the NewDelman Group's motion for summary judgment. See Mem. 59:16-18 (standing and preference issues), 67:3-5 (conversion), 78:27-79:2 (civil conspiracy), ECF No. 303. The order granting in part and denying in part the motions replicated the error. Order para. 3(C)(1),(2),(5),(6). Insofar as the court granted affirmative relief to the NewDelman Group, the ruling is properly described as granting summary judgment in favor of a nonmovant. Fed. R. Civ. P. 56(f)(1), *incorporated by* Fed. R. Bankr. P. 7056.

## II.  PROCEDURE

Sedgwick moves for reconsideration, asking the court to vacate its ruling granting summary judgment in favor of a nonmovant, i.e., the NewDelman Group, as to civil conspiracy, fraudulent concealment, and judicial estoppel and to grant its motion for summary judgment as to the correct interpretation of the Priority Agreement. Fed. R. Civ. P. 54(b), *incorporated by* Fed. R. Bankr. P. 7054(a). It argues two species of errors. First, Sedgwick contends that the court did not provide it "notice and a reasonable time to respond" to issues which were not raised by the NewDelman Group's motion for summary judgment. Fed. R. Civ. P. 56(f), *incorporated by* Fed. R. Bankr. P. 7056. In Sedgwick's view, those issues are civil conspiracy, fraudulent concealment, the existence of a principal-agency relationship between the Niro firm and the NewDelman Group, and judicial estoppel. Second,

Sedgwick believes that the court incorrectly determined that the Priority Agreement was facially ambiguous and that summary judgment in its favor should have been entered.

The NewDelman Group opposes the motion, arguing that summary judgment was properly granted under Rule 56(f) or Rule 56(g), as to the state law torts clams and that the motion for reconsideration merely rehashes Sedgwick's original arguments with respect to the interpretation of the Priority Agreement.  The NewDelman Group also prays recovery of attorney's fees for responding to the motion.

**III.  LAW**

    **A.    Rule 54**

Rule 54 governs judgments in federal court.  As pertinent here, it provides:

> When an action presents more than one claim for relief--
> whether as a claim, counterclaim, crossclaim, or third-
> party claim--or when multiple parties are involved, the
> court may direct entry of a final judgment as to one or
> more, but fewer than all, claims or parties only if the
> court expressly determines that there is no just reason for
> delay. *Otherwise, any order or other decision, however
> designated, that adjudicates fewer than all the claims or
> the rights and liabilities of fewer than all the parties
> does not end the action as to any of the claims or parties
> and may be revised at any time before the entry of a
> judgment adjudicating all the claims and all the parties'
> rights and liabilities*.

Fed. R. Civ. P. 54(b), *incorporated by* Fed. R. Bankr. P. 7054(a) (emphasis added); *see also Smith v. Massachusetts*, 543 U.S. 462, 475, (2005) (courts have the inherent power to modify interlocutory orders); *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F3d 877, 890 (9th Cir. 2000).

An order granting in part and denying in part a motion for summary judgment is subject to revision under Rule 54(b).  *Burge v. Parish of St. Tammany,* 187 F.3d 452, 467 (5th Cir. 1999); *Solis v.*

*Jasmine Hall Care Homes, Inc.*, 610 F.3d 541, 543-544 (9th Cir. 2010).

Such motions are properly directed to procedural, i.e., notice, and

substantive errors. *Hoard v. Hartman*, 904 F.3d 780, 792 (9th Cir.

2018) (Rule 56(f)(3)); *U.S. v. Dieter*, 429 U.S. 6, 8 (1976).

**B.    Rule 56**

In the pertinent part, Rule 56 reads:

> (a) Motion for Summary Judgment or Partial Summary
> Judgment. A party may move for summary judgment,
> identifying each claim or defense--or the part of each
> claim or defense--on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law. The
> court should state on the record the reasons for granting
> or denying the motion.
>
> ...
>
> (f)  Judgment Independent of the Motion. *After giving
> notice and a reasonable time to respond, the court may:*
>
> > *(1) grant summary judgment for a nonmovant*;
> >
> > (2) grant the motion on grounds not raised by a party;
> > or
> >
> > (3) consider summary judgment on its own after
> > identifying for the parties material facts that may
> > not be genuinely in dispute.
>
> (g) Failing to Grant All the Requested Relief. *If the court
> does not grant all the relief requested by the motion, it
> may enter an order stating any material fact*--including an
> item of damages or other relief--that is not genuinely in
> dispute and treating the fact as established in the case.

Fed. R. Civ. P. 56(a),(f),(g), *incorporated by* Fed. R. Bankr. P.

7056(emphasis added).

**1.    Rule 56(f)(1)**

That the court may grant summary judgment in favor of a nonmovant

is beyond question.  Fed. R. Civ. P. 56(f)(1) (subdivision (f)) was

added in 2010 to "bring into [the] text a number of related procedures

that have grown up in practice", Adv. Committee Notes); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (recognizing the authority of the court prior to adoption of Rule 56(f) to enter summary judgment sua sponte against the movant); *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (same).

The central issue in granting summary judgment sua sponte or in favor of a nonmovant is whether "the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014), quoting *Cool Fuel, Inc.*, 685 F.2d at 312; *Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th Cir. 2000); *Buckingham v. U.S.*, 998 F.2d 735, 742 (9th Cir. 1993), quoting *Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

There are three threshold inquiries for summary judgment entered in favor of a nonmovant. First, the party against whom judgment is to be entered "must be given reasonable notice that the sufficiency of his claim will be in issue." *Albino*, 747 F.3d at 1176; *Buckingham*, 998 F.2d at 742. Sedgwick argues that Rule 56(f)(1) (summary judgment in favor a nonmovant) requires notice "independent of the motion." Reply 7:11, ECF No. 343. This is not a correct statement of the law. "[W]hile explicit notice [of the court's intent to invoke Rule 56(f)(1)] is strongly encouraged, it is not required so long as the appellants 'had a full opportunity to present to the district court [their legal] theory and the facts supporting that theory.'" *Osborne v. Cnty. of Riverside*, 323 F. App'x 613, 614 (9th Cir. 2009), citing *Portsmouth*, 770 F.2d at 869-70. Both before and after the 2010 amendments to Rule 56 (which explicitly added summary judgment in favor of a nonmovant), courts have recognized court authority to enter

summary judgment in favor of a nonmovant without independent notice from the court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence"); *Albino*, 747 F.3d at 1176. Summary judgment may be granted in favor of a nonmovant provided the moving party has "be[en] given reasonable notice that the sufficiency of his or her claim will be in issue." *Buckingham*, 998 F.2d at 742. "As the movants for summary judgment in this case, defendants were on notice of the need to come forward with all their evidence in support of this motion, and they had every incentive to do so." *Albino*, 747 F.3d at 1177; *see also Nozzi v. Housing Authority of the City of Los Angeles*, 806 F.3d 1178, (9th Cir. 2015). Courts have routinely found notice sufficient—even without independent notice by the court--where "the court's sua sponte determination is based on issues *identical* to those raised by the moving party." *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 167 (2nd Cir. 1991) (trademark infringement) (emphasis added); *Albino*, 747 F.3d at 1176 (exhaustion of administrative remedies); *Nozzi,* 806 F.3d at 1199-1200 (due process).

Second, the respondent must have had the opportunity to gather the facts, probably by way of discovery, to oppose summary judgment. *Albino*, 747 F.3d at 1176-1177. "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Buckingham*, 998 F.2d at 742; *Portsmouth*, 770 F.2d at 869. "Discovery must either have been completed, or it must be clear that further discovery would be of no benefit." *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2nd Cir. 1996); *Albino*, 747 F.3d at 1176-

1177 ("Defendants had ample opportunity to conduct discovery");
*Portsmouth*, 770 F.2d at 870.

Third, the party facing summary judgment must have "had adequate opportunity to show that there is genuine issue and that his opponent is not entitled to judgment as a matter of law." *Ramsey*, 94 F.3d at 74; *Kassbaum*, 236 F.3d at 494; *Albino*, 747 F.3d at 1176-1177.  As the Ninth Circuit Court of Appeals once observed, the party against whom sua sponte or nonmovant summary judgment is contemplated must have had "a full and fair opportunity to develop and present facts and legal arguments in support of its position."  *Portsmouth*, 770 F.2d at 869.

### 2.    Rule 56(g)

In contrast, Rule 56(g) applies only in limited circumstances. If the court does "not grant all the relief requested by the motion," the court may order that a specific "material fact" is not genuinely in dispute.  Fed. R. Civ. P. 56(g), *incorporated by* Fed. R. Bankr. P. 7056.  It contains no such notice requirement.  Fed. R. Bankr. P. 56(g).

## IV.  DISCUSSION

Rule 56(f)(1), which authorizes a court to grant summary judgment in favor of a nonmovant, rather than 56(g) governs this dispute.  Rule 56(g) is inapplicable because the NewDelman Group did not move for summary judgment with respect to the issues presented and because this court's findings and orders are conclusions of law, not material facts.

### A.    Judicial Estoppel

Sedgwick contends that the court erred by invoking the doctrine of judicial estoppel: (1) without advanced notice to Sedgwick; and (2) by finding that the sequestration order, Common Ex., Order Granting

Motion to Approve Compromise para. 7, 397, and Settlement Agreement para. 8(c), 405, ECF No. 244, satisfied the elements of judicial estoppel. Mem. P.&A. 18:11-21:23, ECF No. 329. This court agrees. Sedgwick was not given notice that the court believed the doctrine was applicable to the adversary proceeding and, by doing so, did not give Sedgwick a full and fair opportunity to be heard on the issue. *Albino*, 747 F.3d at 1176; *see also*, *In re Auyeung*, No. BAP EC-14-1382, 2015 WL 3609301, at *11 (9th Cir. BAP 9th Cir. June 9, 2015) (discussing application of judicial estoppel sua sponte). Having found notice insufficient, the court does not reach the merits of its application to the facts presented by this case.

**B. Civil Conspiracy and Fraudulent Concealment**

The court believes that Sedgwick had a full and fair opportunity to be heard on the issues. By contending "there is no admissible evidence to support the NewDelman Group's outlandish fraudulent conspiracy theories," Mot. 2:19-3:2, ECF No. 255, Sedgwick placed the sufficiency of its claim in issue and had notice to come forward with all of its evidence. *Albino*, 747 F.3d at 1176. There exists identity of issues between the court's ruling and the movant's motion for summary judgment. *Coach Leatherware Co.,* 933 F.2d at 167. The factual and legal issues were extensively briefed and argued. Mem. 38:1-43:23, ECF No. 257. In support of the cross-motions for summary judgment Sedgwick and the NewDelman Group filed 17 pages of stipulated facts and 1,797 pages of exhibits. Moreover, the ruling of which Sedgwick now complains is rooted in three stipulated facts and a Letter of Intent (to which no objection was made).

Notwithstanding the belief that Sedgwick enjoyed the full benefit of notice and process, the court will allow the parties to brief the

13

issues and augment the evidentiary record on the issues of civil conspiracy and fraudulent concealment. The question of whether to reconsider previous rulings is committed to the sound discretion of the trial court. *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). And the court now exercises that discretion. The precise contours of the adequacy of notice and opportunity to be heard are ragged and subject to dispute, even in the appellate courts. See *Coach Leatherware Co.,* 933 F.2d 162, at 172 (majority finding party had sufficient incentive to oppose, dissent did not); *Albino*, 747 F.3d at 1176 (split decision). The standard for defeating summary judgment is low; a party opposing summary judgement need only show competing inferences to create a genuine issue of fact. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Where a court invokes its authority to enter judgment for a nonmoving party the opportunity for procedural prejudice is great. *Coach Leatherware Co., Inc.*, 933 F.2d at 167. Moreover, the issues underlying the grant of summary judgment against Sedgwick are numerous, complex, and nuanced. For these reasons the court believes prudence suggests granting Sedgwick the opportunity to be heard further.

### C. Construction of The Priority Agreement

Unlike the remainder of the motion, Sedgwick argues error, rather than the lack of notice, with respect to the interpretation of the Priority Agreement. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (error); Mem. P.& A. 21:26-25:3, ECF No. 329. In Sedgwick's view, the Priority Agreement "unambiguously creates a waterfall structure," requiring payment to GKC/Sedgwick in full prior to paying the NewDelman Group. Mot. Recons. 3:25-27, ECF

No. 327.

This court disagrees. The agreement is facially ambiguous and, considering parol evidence, a genuine dispute of material fact exists. Mem. 49:10-55:8, ECF No. 303. Sedgwick reads the "precedence provisions," i.e., "priority" vs. "pari passu," and the timing provisions, i.e., "priority" vs. "concomitantly," and as separately functioning provisions, addressing first the priority of the parties' right to payment and secondarily the timing of payment. In this court's view, the provisions function in an integrated fashion, arising from the overlapping meaning of the words, "priority" (suggesting precedence in time and right), "concomitantly" (something that accompanies), and "pari passu" (at an equal rate or pace). Mem. 53:1-22, ECF No. 303.

But even if the court were to adopt Sedgwick's construction, that the phrases function independently, the Priority Agreement is still ambiguous. Sedgwick rightly argues that the word "priority" suggests precedence in right by class of creditors, i.e., "Second Priority" creditors are paid in full before "Third Priority" creditors. But the Priority Agreement's treatment of Third Priority creditors (including the NewDelman Group) creates the ambiguity. That agreement provides:

Second Priority: GKC

Third Priority: First Class for reimbursement of loans and related interest up to seventeen million four hundred thousand U.S. dollars (US $$17.4 million) as of the date of this Priority Agreement, and distributions of gross Recoveries as defined in the Amended Fee Agreement *thereafter* by percentages pari passu with '*the above named individuals*' as follows:

First Class: Nineteen Percent (19.0%) of the gross Recoveries.

Mitchell J. NewDelman: Five percent (5%) of the gross Recoveries.

15

1　　　　　　　Dr. Frank B. Holze: One percent (1%) of the gross
　　　　　　　　Recoveries.
2
　　　　　　　Willis E. Higgins: Three percent (3%) of the gross
3　　　　　　　Recoveries.

4　　　　　　　Donald S. Stern: Five percent (5%) of the gross
　　　　　　　　Recoveries.
5
　　　　　　　Ronald W. Hofer: Five percent (5%) of the gross
6　　　　　　　Recoveries.

7　Common Ex., Priority Agreement 754-764, ECF No. 246 (emphasis added).

8　　　　As written, the phrase "pari passu with 'the above named

9　individuals" refers to classes with a lower numeric designation, i.e.,

10　GKC/Sedgwick.  At the hearing on the cross-motions for summary

11　judgment, Sedgwick conceded the ambiguity by arguing that the verbiage

12　was, in fact, a scrivener's error and it should have read "the below-

13　named individuals."

14　　　　MR. IVES:

15　　　　...

16　　　　Pari-passu only deals with splitting up the amounts for
　　　　　theses listed percentages.  And that issue is a discrete
17　　　　one, Your Honor, that I think is separate from the
　　　　　concomitant clause, and that is not ambiguous.
18　　　　*Respectfully, it is incredibly clear with the only
　　　　　reference being, I believe, Mr. Higgins, in drafting it,
19　　　　should have said the below-named individuals instead of the
　　　　　above-named*, because it doesn't—it's just (unintelligible).
20
　　　　　THE COURT: Well, doesn't that create the triable issue?
21
　　　　　MR. IVES: I don't believe so...
22
　　　　　THE COURT: Summary judgments.  So[,] you're wanting to
23　　　　change the language...and that doesn't create a triable
　　　　　issue.
24
　　　　　MR. IVES: I don't think so, Your Honor, because no party
25　　　　disputes the interpretation of that.

26　　　　THE COURT: Well, but the problem is summary judgement
　　　　　is...that there's no dispute of facts, not whether the
27　　　　parties dispute it, but whether there is none even if the
　　　　　Court finds beyond what you thought, and you're entitled to
28　　　　judgment as a matter of law, I think you have walked

1    yourself straight into a genuine issue of fact.

2    MR. IVES: And respectfully, Your Honor, I don't believe
that—that there can be any other interpretation of this
3    cause, the pari-passu clause.  This is as plainly—

4    THE COURT: And you say—what?

5    MR. IVES: --clear as I believe it can be, which is that—
this pari—-unlike the other clauses that apply at every
6    level, this par-passu clause falls only within the third
layer.  It is only reference to that issue, it's only
7    reference to individuals, the only individuals that are
listed there.

8    ...

9

10    THE COURT: But it says 'by percentages [in] pari-passu with
the above-named individuals.'  Doesn't that refer to at
least GKC?
11

12    MR. IVES: Your Honor, again, I don't believe there's any
dispute between the parties, and *this is purely a*
*scribner's (sic) error that no one caught which is it*
13    *should say First Class Legal and below-named individuals*...

14
Hr'g Tr. 23:21-25:14, January 19, 2022, ECF No. 338 (emphasis added).
15
     The court does not believe its original ruling was erroneous and
16
that competing evidence precludes summary judgment.  Moreover,
17
Sedgwick's argument that the Priority Agreement contained a
18
scrivener's error further demonstrates the ambiguity in the agreement.
19
As to the interpretation of the Priority Agreement, the motion will be
20
denied.
21
     **D.**    **Sedgwick's Remedy**
22
     Sedgwick's motion for reconsideration asks the court to vacate
23
specific portions of its order granting and denying summary judgment.
24
Mot. Recons. 3:20-24, ECF No. 327.
25
     This remedy is disproportionate to the procedural prejudice, if
26
any.  Circuit law provides that a motion for reconsideration and/or
27
the opportunity to brief the issues raised and to augment the record
28

cures any notice deficiency. *O'Keefe v. Van Boening*, 82 F.3d 322, 324 (9th Cir. 1996) ("We do not decide whether it was error to enter summary judgment sua sponte, because if there were error, it was rectified when the district court reconsidered the matter"); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 402 (5th Cir. 1998); *Curley v. Perry,* 246 F.3d 1278, 1284 (10th Cir.2001); *Watchtower Bible & Tract Soc'y of New York, Inc. v. Municipality of San Juan*, 773 F.3d 1, 13 (1st Cir. 2014); *Simmons v. Reliance Standard Life Ins. Co. of Texas*, 310 F.3d 865, 870 (5th Cir. 2002) ("[i]f the party opposing the motion for summary judgment is "afforded an opportunity ... to present the court with evidence supporting [its] arguments" in a motion for reconsideration, the court's failure to provide an opportunity to respond is harmless error.").

Here, most of Sedgwick's contentions sound, at least in part, in a lack of notice and opportunity to file briefs, as well as augment the evidentiary record. As a result, Sedgwick's invitation to vacate the order granting, in part, summary judgment is unnecessary. The court will not vacate its prior order at this time; rather, it will issue an order authorizing the parties to file briefs and augment the evidentiary record. If Sedgwick can demonstrate a factual dispute or that the NewDelman Group is not entitled to judgment as a matter of law, the court will amend its order granting partial summary judgment to the NewDelman Group and such an order sufficiently resolves any prejudice.

**E. The NewDelman Group's Request for Attorneys' Fees**

Without specifying the authority for this court to act, the NewDelman Group seeks attorneys' fees incurred in opposition this motion. Resp. 22:25-23:12, ECF No. 340. In their view, Sedgwick's

1  actions in prosecuting the motion are in bad faith.  *Id.*

2       As a rule, in the United States parties each bear their own

3  attorneys' fees and may not recover those fees from the other party,

4  even if they prevail.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983);

5  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994); *Nantkwest, Inc. v.*

6  *Iancu*, 898 F.3d 1177, 1179-1180 (Fed. Cir. 2018).  Three exceptions

7  exist: (1) where a contract between the parties provides that one

8  party, i.e., the prevailing party, may recover attorneys' fees; (2)

9  where a statute or rule provides for the recovery of fees by the

10  prevailing party; and (3) where the court exercises it inherent

11  equitable powers to shift fees.  Robert E. Jones et al., *Federal Civil*

12  *Trials and Evidence* § 19:251 (2022).  The court's inherent powers

13  include the power to shift attorneys' fees to a party that has acted

14  "in bad faith, vexatiously, wantonly, or for oppressive reasons."

15  *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 258-259

16  (1975); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S.

17  545, 557 (2014).

18       No such inappropriate conduct is present here.  Sedgwick's motion

19  pulls this court into the inscrutable world of notice and opportunity

20  to be heard in the context of summary judgment granted in favor of a

21  nonmovant.  In some instances, Sedgwick's concerns are well-taken or,

22  at least, present a sufficiently close question that the opportunity

23  for further briefing and/or the augmentation of the evidence record is

24  prudent.  Neither objective, nor subjective, bad faith is present.

25  The NewDelman Group's request for attorney's fees will be denied.

26  **V.    CONCLUSION**

27       For the reasons herein, Sedgwick's motion to vacate the order

28  granting summary judgment against it and denying summary judgment as

1  to the proper construction of the Priority Agreement is denied.  But

2  the court will allow the parties to file briefs and to augment the

3  evidentiary record with regard to limited issues on which the court

4  granted summary judgment against Sedgwick.  The NewDelman Group's

5  request for attorney's fees is denied.  The court will issue an order

6  from chambers.

7      **Dated:** June 24, 2022

8

9  _____

10 Fredrick E. Clement
   United States Bankruptcy Judge

# Instructions to Clerk of Court

**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Attorneys for the Plaintiff | Attorneys for the Defendants(s) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |